# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MURREL VAILES, | ) |
| Petitioner, | ) No. CV 10-233-TUC-RCC (CRP) |
| vs. | ) REPORT AND RECOMMENDATION |
| CRAIG APKER, | ) |
| Respondent. | ) |

Petitioner Murrel Vailes, presently incarcerated at the United States Penitentiary in Tucson, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"). (Doc. 1). Vailes asserts the Bureau of Prisons ("BOP") unconstitutionally revoked 14 days of good conduct time during a disciplinary hearing. (Doc. 1, pp. 4-5).[1] He argues the revocation was unconstitutional because he was not afforded due process at his disciplinary hearing; specifically, he alleges he was not permitted to present evidence or call a witness. (Doc. 1, p. 4). Vailes seeks the restoration of his lost good conduct time, administrative sanctions against the officers and the disciplinary report expunged. (Doc. 1, p. 11). The Government opposes the petition, arguing Vailes's due process rights were not violated and that the disciplinary hearing officer's decision is supported by some evidence, the required standard. (Doc. 10).

---

[1] The Order cites to the Court's electronic case management system's pagination of documents.

On October 6, 2010 this Court required supplemental briefing from the parties. (Doc. 11). The Court requested Vailes describe the evidence his alleged witness would have offered. From both sides the Court requested information about the waivers of rights forms. These forms were submitted by the Government as proof that Vailes waived his rights to evidence and witnesses. Disconcerting to this Court, these forms were not signed by Vailes but rather, they were signed by prison employees allegedly on behalf of Vailes who was in restraints. The Court also requested further information about Officer Lewis's ability to view Vailes's cell from her office. Vailes filed his supplemental briefing in October 2010 and the Government filed its response. (Docs. 12, 15). In its response, the Government offered the sworn statements of five prison employees involved in or familiar with Vailes's incident. For the reasons discussed below, the Magistrate Judge recommends the District Court deny with prejudice Vailes's habeas petition.

## I.   FACTUAL AND PROCEDURAL HISTORY

On March 14, 2009, Officer Nicole Lewis filed an incident report stating she observed Vailes masturbating in his cell. (Doc. 10-1, p. 10; Doc. 15, p. 4). Officer Lewis reported:

> On March 14th 2009 at 6:30pm, I noticed inmate Vailes #10662-298 standing in his cell standing near the door with his exposed erect penis in his hand and stroking it in a back and forth motion. When I looked up again I saw him looking at me through the crack in the door way still moving his hand in an up and down motion because he was sitting in his chair. At this time I was about to walk over to his cell and address the matter when the Compound officers walked in and that's when inmate Vailes started to put on his shirt.

(Doc. 10-1, p. 10). Vailes stated later that evening he was informed by other officers that Officer Lewis filed a report against him for the incident and he was placed in the Special Housing Unit. (Doc. 1, p. 4).

The following day, on March 15, 2009, Lieutenant David Silva investigated the alleged violation and interviewed Vailes. (Doc. 10-1, p. 14; Doc. 15-1, pp. 3-4). Lieutenant Silva gave Vailes a copy of the incident report. (Doc. 10-1, pp. 10, 16). Vailes disputes that he received a copy of the report while in the Special Housing Unit. (Doc. 1, p. 6). Vailes

- 2 -

made the following statement to Lieutenant Silva:

> I was writing letters in my cell, I wasn't doing what she says I was doing. I spoke to that women [sic] twice that day once about my pack number and if the unit counselor was here today. That woman is full of shit. I would never do that.

(Doc. 10-1, p. 14). Lieutenant Silva stated in the report and in his declaration to this Court that he gave Vailes the opportunity to provide further evidence or witnesses but Vailes "declined to do so." (*Id*.; Doc. 15-1, p. 3).

Due to a shortage of staff, the Unit Disciplinary Committee ("UDC") meeting was delayed. (Doc. 10-1, pp. 11, 12). The delay is not a contested issue. On March 25, 2009, prison employees Case Manager Mark County and Unit Manager Jeff Miller conducted the UDC meeting and provided Vailes with notice of an upcoming disciplinary hearing on the charge against him. (Doc. 10-1, pp. 10, 13; Doc. 15-1, pp. 6-7). Case Manager County personally asked Vailes, as a requirement of the UDC, whether he wanted a staff representative and/or any witnesses at the DHO Hearing. (Doc. 15-1, pp. 6-7). Petitioner said he did not want either and Case Manager County marked on the form that Vailes declined a staff representative or witnesses. (Doc. 15-1, pp. 6-7; Doc. 10-1, p. 13). Case Manager County noted in his declaration to this Court that he signed the waiver of rights form on behalf of Vailes because Vailes was in restraints at the time. (Doc. 15-1, p. 7). It is now the BOP's policy that an inmate personally sign this form. (Doc. 15-1, p. 7).

On April 3, 2009, DHO Vickie Petricka began the disciplinary hearing. (Doc. 10-1, p. 18). DHO Petricka suspended that hearing to interview Officer Lewis about how she was able to view Vailes through "a crack in the door." (*Id*.). Officer Lewis explained to DHO Petricka that Vailes's cell door was open when Officer Lewis walked by and she could see him masturbating. (Doc. 15-1, p. 10). Officer Lewis told DHO Petricka that she then returned to her office and could still see Vailes masturbating through a crack in her office door. (Doc. 15-1, p. 10). After speaking with Officer Lewis, DHO Petricka concluded the disciplinary hearing on April 29, 2009. (Doc. 10-1, p. 18).

At the beginning of the April 29, 2009 hearing DHO Petricka advised Vailes of his

- 3 -

rights including the right to call witnesses and the right to have a staff representative. (Doc. 15-1, p. 9). Vailes did not request a staff representative or witnesses and he told DHO Petricka that he was ready to proceed. (Doc. 15-1, p. 9). In her report, DHO Petricka summarized Vailes's statement at the disciplinary hearing as follows:

> Vailes, Murrel, Reg. No. 10662-298, stated he received a copy of the incident report. Vailes was read his rights by the DHO and stated he understood his rights. Vailes indicated he was ready to proceed with the hearing. Inmate Vailes stated that it is false. Everything she said is false. If he did that he would be in a lot of trouble. His door was open all the time.

(Doc. 10-1, p. 16).

DHO Petricka determined that based on the greater weight of the evidence, Vailes was guilty of the alleged act. (*Id.*). In support of her finding, DHO Petricka relied on Officer Lewis's explanation that Vailes's door was open when she walked past his cell and "then returning to the office to call the Lieutenant her door was partially opened and she could see [Vailes] through the crack in her office door." (*Id.*).

In its supplemental briefing, the Government also offered the affidavit of Special Investigative Agent ("SIA") A. Mendez who investigates crimes at USP Tucson. (Doc. 15-1, p. 15). SIA Mendez said he was familiar with Vailes's incident and also familiar with Vailes's unit where his cell is located as he has been in that unit "on hundreds of occasions." (Doc. 15-1, p. 15). He stated that Vailes's cell "can be clearly viewed from the open door of the Correctional Officer's Office in Unit B-1. There is no obstruction of any kind which would block this view." (Doc. 15-1, p. 15). SIA Mendez also noted his department operates the security cameras at USP Tucson. (Doc. 15-1, p. 16). He stated the cameras do not monitor activity inside individual cells and the images are "taped over in a regular cycle approximately every 14-21 days." (Doc. 15-1, p. 16).

After DHO Petricka found Vailes committed the prohibited act, Vailes appealed. (Doc. 10-1, p. 21; Doc. 1-1, p. 11 (better copy)). In his appeal to the Regional Director, Vailes stated:

> idmediately [sic] after I was noticed of the situation I began asking every staff member to review the surveillance moniters

- 4 -

> [sic] inside the building. Before I got a chance to prove my innocents [sic] or provide a witness officers placed restraints. After removing me out of the cell for questions to complete their investigation. However I contined [sic] asking the (LT) in charge but he simply denied my request.

(Doc. 1-1, p. 11). The Regional Director denied Vailes appeal, finding no evidence that Vailes requested a review of video surveillance tapes during the investigation and that, based on the waiver of rights form signed by a prison employee, Vailes waived his right to witnesses. (Doc. 10-1, p. 22). The Regional Director also found DHO Petricka's decision was supported by the greater weight of the evidence. (*Id.*).

After his appeal was denied, Vailes appealed to the Central Office with the same description of the alleged violations. (Doc. 10-1, p. 23). The National Appeals Administrator denied this final administrative appeal. (Doc. 10-1, p. 24). He found DHO Petricka's decision was based on the greater weight of the evidence, that there was no evidence Vailes requested an evidentiary review of the surveillance video and that Vailes's due process rights were upheld during the disciplinary hearing. (*Id.*).

On April 22, 2010, Vailes filed the federal habeas petition. (Doc. 1).

**II.   ANALYSIS**

The limited due process rights of an inmate in prison disciplinary proceedings were elucidated by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974). Included in those rights is "the right of an inmate to call and present witnesses and documentary evidence in his defense before the disciplinary board." *Ponte v. Real*, 471 U.S. 491, 495 (1985) (referencing *Wolff*, 418 U.S. at 556). Inmates do not have the unqualified right to call witnesses and present documentary evidence when granting such a request would be "unduly hazardous to institutional safety or correctional goals." *Ponte*, 471 U.S. at 495 (quoting *Wolff*, 418 U.S. at 566).

In the case before this Court, Vailes alleges that immediately after receiving notice of the charge against him, he requested prison staff, specifically Lieutenant Silva, review the video security tapes. Vailes argues the security cameras "have a direct line of sight" into his cell and the entire B1 Unit. He contends review of the security tapes would have shown that

- 5 -

he was standing outside his cell with Kashion Murray during the time Officer Lewis reported that he was masturbating in his cell. (Doc. 12, p. 2).

The record shows Vailes never requested review of the security tapes until after the disciplinary hearing when he appealed DHO Petricka's decision to the Regional Director. Vailes had, at a minimum, three opportunities to request the security tapes be reviewed. In the initial investigation, Lieutenant Silva asked Vailes if he had any evidence about the incident that he would like to give Lieutenant Silva and Vailes said no. Vailes also had the opportunity to ask for a review of the security tapes when he met with Case Manager County and Unit Manager Miller during the UDC meeting. Their reports from the UDC meeting and Case Manager County's declaration to this Court show Vailes did not request that they review the security tapes. Further, Vailes was given the opportunity to present evidence at the disciplinary hearing but said nothing about the security tapes. Vailes offers no evidence that he requested the security tapes be reviewed.

Vailes also alleges he was denied his right to call a witness. Vailes contends Kashion Murray was an alibi witness who could testify that during the time of the incident, Vailes was "watching television and talking" with him. (Doc. 12, p. 2).The record does not support Vailes's contention that he requested a witness. Vailes was given three opportunities to request witnesses. In the initial investigation, Lieutenant Silva asked Vailes if he had any witnesses and Vailes said no. (Doc. 10-1, p. 14; Doc. 15-1, p. 3). At the UDC meeting, Case Manager County asked Vailes if he wished to call any witnesses at the disciplinary hearing and Vailes said no. (Doc. 15-1, pp. 6-7). Finally, at the disciplinary hearing DHO Petricka informed Vailes of his right to call witnesses and noted that Vailes did not wish to call any witnesses. (Doc. 15-1, p. 9).

In its supplemental briefing, the Government offered the sworn statements of five BOP employees who were involved in or familiar with this incident. These declarations show Vailes had multiple opportunities to request evidence and witnesses but chose not to make those requests. Vailes was afforded his due process rights to call witnesses and present evidence. Further, the evidence developed by DHO Petricka when she interviewed Officer

Lewis show DHO Petricka's finding that Vailes committed the prohibited act is supported by the required "some evidence" standard. *Superintendent, Mass. Correctional Institution, Walpole v. Gerald Hill and Joseph Crawford*, 472 U.S. 445, 455‑456 (1985) (a finding resulting in the loss of good conduct time must be support "by some evidence in the record.").

### III.  RECOMMENDATION

Based on the foregoing, the Magistrate Judge recommends that the District Court DENY with prejudice the Petition for Writ of Habeas Corpus.  (Doc. 1).

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation.  If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **CV 10-233-TUC-RCC.**

The Clerk of the Court shall mail a copy of this Report and Recommendation to Petitioner.

DATED this 13th day of April, 2011.

*[signature]*

CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE